Feb. 6, }
  1917. }

## GRAFTON COUNTY ELECTRIC LIGHT AND POWER COMPANY & a., Ap'ts, v. STATE.

On appeal from an order of the public service commission fixing the value of property to be acquired by a public utility and to be paid for in securities in such sum as will represent the value of the property so to be transferred, the question is what is the property fairly and reasonably worth for the proposed purpose at the time the securities are to be issued.

In determining the value of property for such purpose the sale price is not neces-sarily controlling; the court will also consider not only the original cost but the cost of reproduction, less depreciation, together with other elements, such as probable future net earning capacity under legal regulation; to this sum should be added such sum as may be paid in in cash for working capital together with reasonable legal expenses of organization and of the proceedings to de-termine capitalization.

Though the finding of the commission on this question of value is *prima facie* correct, it must be determined by the court on appeal according to the court's view of the relative weight of the evidence in the record.

APPEAL, from the public service commission, filed September 23, 1916. Previous decisions in the same controversy are reported, 77

N. H. 490 and 77 N. H. 539.  After the last decision further evidence was introduced before the commission as to the value of the property which the plaintiffs wished to capitalize.  The commission found the fair value of this property on November 1, 1912, was $165,000 and, upon the plaintiffs' declining to ask for an order permitting capitalization of the property at this sum, ordered the petition dismissed.

*Streeter, Demond, Woodworth & Sulloway, Thomas W. Streeter* (of Massachusetts) and *Benjamin W. Couch* (*Mr. F. S. Streeter* orally), for the plaintiffs.

James P. Tuttle, *attorney-general* and *Louis E. Wyman* (*Mr. Wyman* orally), for the state.

PARSONS, C. J.  This is a petition brought by the Grafton County Electric Light and Power Co., owners of the capital stock of the Lebanon Electric Light and Power Co. and of the stock and bonds of the Mascoma Electric Light and Power Co., and hence of all of the property of these companies.  Under this petition and petitions of the other two companies, all being considered together, it has already been determined that the combination of the two last named companies into one should be allowed, and the plaintiffs in this petition be given permission to engage as a public utility in the distribution of electricity for light and power as asked in the petition.  77 N. H. 539.  The only remaining question is that of the amount of the capitalization of the  plaintiffs' company.  This company, owning the securities of the combining companies, desires to issue its securities in place thereof.  Under the act establishing the public service commission, the commission may authorize any public utility to issue stock in payment for property of other corporations which it may lawfully acquire.  Laws 1913, *c.* 145, *s.* 15(e); S. P. S., *p.* 352.

It has also been decided in this case that the property of the Mascoma and Lebanon companies, the transfer of which to the plaintiff company was authorized, might "be paid for in securities of the latter company in such sum as will represent the value of the property transferred."  *Grafton &c. Co.* v. *State*, 77 N. H. 539, 542.  Since that decision further evidence upon the question of value has been submitted to the commission and they have found the value of the property of the two companies which the plaintiffs desire to capitalize to be $165,000.  The substantial question upon this appeal is this question of value.  Although the finding of the commis-

sion is *prima facie* correct, the question now before the court neces-
sarily involves the determination of the fact according to the court's
view of the relative weight of the evidence in the record.   77 N. H.
490.   The question now presented is not the amount of the property
as a basis for making rates, but what is the value of the property
which in the exercise of their business judgment the company con-
siders wise to put into the business.   "It may capitalize what it
owns, but it can charge rates only on the basis of so much of its
property as is devoted to the business in hand."   *Grafton &c. Co.
v. State, supra*, p. 541.   Property instead of cash is to be represented
by the securities to be issued.   The question obviously is what
amount in cash does the property fairly and reasonably represent.
Assuming the securities are to be sold to the public, what is a reason-
able sum under all the circumstances for the public to pay?   If the
securities were not to be sold, if the capitalization were to be a mere
book entry, it is obvious the public would have no interest in the
question.   The answer to the question, What is it reasonable for
the investing public to pay, is plainly what is the property worth for
the purpose for which it is to be used?   What would a single in-
dividual with abundant means desirous of engaging in the business,
but perhaps cautious in making investments, pay for such properties
in the situation found upon the date of the proposed capitalization?
Such an investor would naturally consider, if the facts were avail-
able to him, what the property had actually cost the original
owners; how much it would cost to construct a new plant to carry on
the business as economically as the existing one; how much less
the existing plant would be worth than a new one because of de-
preciation or inferior or antiquated construction; what return upon
the investment was probable; the prospect of future business;
whether an increase of profit by economies in management or whether
a greater expense account than in the past must be expected.
Upon the question of future returns, such investor would have in
mind that he would be permitted to charge only a fair price for
the product of his business and also that he could sell at a fair price
without competition.   Such an investor would pay the fair value of
the property at the time and the general investing public can ask
no greater consideration.   "The ascertainment of that value is not
controlled by artificial rules.   It is not a matter of formulas, but
there must be a reasonable judgment having its basis in a proper
consideration of all relevant facts."   *Minnesota Rate Cases*, 230
U. S. 352, 434.   "In order to ascertain that value the original cost

of construction, the amount and market value of its stock and bonds, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration and are to be given such weight as may be just and right in a particular case." *Smyth* v. *Ames*, 169 U. S. 466, 546, 547.

Logically the value to be determined would appear to be the value at the time the securities are to be issued. The petition was filed in September, 1912. Since that time large additions have been made to the plants of both companies. The expenditure for these additions has been found and the parties ask to have the value for capitalization found by adding the additional expenditure to the value taken as of November 1, 1912. There seems no serious objection to this procedure.

The evidence of the value at that date consists of the actual expenditure for construction up to that time as accurately as it could be determined; the cost of reproduction less depreciation, in the opinion of two engineers, one employed by the plaintiffs and one by the commission, whose results are in substantial agreement; the amount of the income and expense accounts of the two companies up to the time of the hearing and the price paid for the properties in 1912 by the plaintiffs. Upon all this evidence the commission find the value of the properties to be $165,000. The plaintiffs claim the value is not less than $300,000, the sum at which they desire to capitalize and contend that it is in fact much greater. The attempt to establish a rule for the decision of questions of fact always results in failure. The different classes of evidence proper for consideration may appear of different weight to different minds. The question is not whether a reasonable mind might reach the result the commission have reached, but what impression does the evidence make on the minds of the court. The five members of the court must pass on the question and agree if possible in the final result. Agreement having been reached upon that point, disagreement upon the subsidiary questions is immaterial. Considering all the competent evidence, we think the property proposed to be capitalized was fairly worth November 1, 1912, $245,000. While the path by which this result is reached probably varies with each member of the court and little advantage would be found in tracing the route each has followed in reaching that result, in fairness to the labor and attention which the commission have given the case brief reference to the consider-

ations which have led to a different result may not be improper. We have been inclined to give more weight to the cost of reproduction as testified to by the engineers of whose competency and honesty no question is made, and to consider of less importance the price paid for the property in 1912 which latter seems to have been regarded as practically conclusive. The value of property is what it is worth in money, what it will bring in money to the seller or what it will cost the buyer in money to obtain it. *Cocheco Co.* v. *Strafford*, 51 N. H. 455, 480, 481. While there are no sales of plants such as the Mascoma or Lebanon taken as a whole and no market value in the ordinary sense, yet for very much of the property which is sought to be capitalized there is a market value, for exactly similar material can be purchased in the market. Poles, wire, insulators, cross arms, dynamos, transformers, shafting, water wheels, all have a market value. The reproduction cost is simply the combination of these several market values with the cost of combination. What a new plant would cost would be of great importance to one proposing to purchase one in operation. The cost of similar construction new is a mere matter of figures to those skilled in such enterprises. Hence this value, subject to such diminution as those skilled in the matter agree should be made for depreciation from use and time and other causes, is entitled to serious consideration.

There is nothing in the reasoning of Judge Hughes in the *Minnesota Rate Cases*, 230 U. S. 352, which attacks the use of the reproduction cost less depreciation as evidence upon the question of value in a case like the present. The passage from the opinion that has been relied upon to establish that little weight should be given to this method of ascertaining value sustains and emphasizes its importance in the present case. It is there said: "The cost-of-reproduction method is of service in ascertaining the present value of the plant, when it is reasonably applied and when the cost of reproducing the property may be ascertained with a proper degree of certainty." *Minnesota Rate Cases*, 230 U. S. 352, 452.

The attack of the opinion is solely upon the attempt to so estimate the value of the right of way in those cases,—not to the use of such method in determining the value of the physical property of the plant. Whether the views there advanced are sound or not is immaterial in this case. The values of the hydraulic and electrical machinery and distributing equipment are not affected by the existence or non-existence of these two plants. The value of such property is determined by the price in the open market. If a

water wheel costs $300 and usually has a life of twenty years, the ordinary mind would not have difficulty in coming to the conclusion. that such a wheel in service only ten years was worth something like half price. There is no evidence these companies have enhanced values in Lebanon and the surrounding towns, or that if they have, any such increment of value has entered into the valuation of the property made by the engineers. It is not probable a plant found to be worth only $55,000 has greatly enhanced values in the town of Lebanon appraised for taxation at five millions of dollars.

The investment cost is evidence on the question of present value. The cost of reproduction new, less depreciation, is also evidence. It is immaterial upon the latter method of appraisement whether the expenditures estimated by the experts as involved in new construction were or were not made in fact. The two methods of appraisal are independent and entirely distinct. The weight to be given either method must depend upon the circumstances of the particular case. If the parties owning these plants economized upon construction by furnishing personal service without charge instead of employing expensive engineering talent and have enlarged and improved their property from earnings, such expenditures being concealed from view because never paid for or charged to operating expenses, whatever the property is now worth is theirs. The concern of an intending purchaser would be the value of the construction on sale, not the manner in which the proposed seller obtained a valid title.

When property such as this, not subject to ordinary sale, is sold privately with no competition, the sale furnishes only the opinion of the seller and the purchaser as to value, given under circumstances entitling it to consideration but by no means to be regarded as conclusive. In the present case it is clear the purchasers bought because they thought they were getting the property for less than its value and it is very clear from all the evidence that whatever view the sellers entertained in each case, the property, especially the Lebanon plant, was sold for much less than its value.

Under the circumstances the sale price is not controling. Neither is it material that the petitioners may make a profit by the transaction. If they bought for less than the value, the profit is theirs as they would have had to stand the loss if they had paid too much. The fact that the concerns are in operation, going concerns, is to be taken into consideration. If there was no opportunity to use

the property in the distribution of electricity, the property would be of little value. The fact that customers have been secured is an element of value to be reckoned. It may be that in the past this labor has been charged under operating expense, but it is an asset of the property even if the service was given. The citizen of Danbury who has installed a 15 H. P. public utility will be entitled to capitalize the reasonable expense of installation, even if all the labor was performed by his farm hands hired by the month without any extra expenditure by him.

It will not be useful to go into a computation of earnings past and present for capitalization, but the fact that the business is prosperous under existing rates which apparently compare favorably with those throughout the state would enter into the estimate of price by any prudent buyer. It is not probable state regulation will grant favors in the matter of rates to any particular section of the state not given all others similarly situated. As to the water powers, the expense of utilization is reckoned in the estimates of the cost of reproduction of the plants. The plaintiffs own only one half of two of the powers and, while they may anticipate securing the remainder of the title easily, such title obviously cannot enter into the appraisal of the property until it is obtained.

The plaintiffs claim their water power should be valued by capitalization of the saving over the expense of operation by steam alone. While the method of water power valuation by comparison with the expense of operation by steam perhaps correctly determines the amount of the owners' damages if the water power should be taken from them, requiring the entire operation by steam, it is no test of the price which would be paid for it as a part of a purchase of the whole plant. The question then would be the cost of installing and operating a plant relying wholly upon steam or of securing other water power. The commission find other such power might be secured and the *prima facie* character of their finding is not overcome by the evidence.

As the plaintiffs' property is worth $245,000, a decree refusing to permit capitalization of it at that sum must be set aside as unjust and unreasonable. To this must be added such sum as the parties desire to pay in in cash for working capital. Laws 1911, *c.* 164, *s.* 14 (g),—added by Laws 1913, *c.* 145, *s.* 15, has no application to the present case. Also the amount of the expenditures for additions and improvements made since November 1, 1912, about which no serious questions appear to be raised is to be included. The only

remaining item is the expenditure in the prosecution of this case. Legal expense of organization is universally regarded as a proper item of capitalization. It necessarily must precede operation and no method is apparent by which this expense can be met except from capital. The fact that the peculiar circumstances of this case may make the organization expense large does not alter the principle. This will include all expenditures by order of the commission and the amount reasonably expended or incurred by the plaintiffs in the course of this litigation. The only facts remaining to be settled appear to be the amount of working capital, which will be determined by the plaintiffs; and the expense of organization, which will be found by the commission. This being determined, the only just and reasonable order that can be made will be one permitting capitalization at the aggregate of the several sums, the value of the property, $245,000, the new expenditure, $73,572.42, the amount required for working capital, originally estimated at $15,000, and the organization expense.

The case is recommitted to the commission for such further proceedings as justice may require in accordance with the foregoing findings and rulings.

*Remanded.*

All concurred.