Sullivan,
No. 5268.

J. Laban Ainsworth

*v.*

Claremont.

Argued November 4, 1964.
Decided November 30, 1964.

*Leahy* & *Denault* (*Mr. Albert D. Leahy, Jr.* orally), for the plaintiff.

*Robert B. Buckley*, city solicitor (by brief and orally), for the defendant.

LAMPRON, J.   The plaintiff owns a farm in Claremont consisting of about 155 acres of land, an eleven-room dwelling, a barn, and seven other structures.   During the year 1961, all the taxable property in the city was reassessed.   The resulting valuations were to be used beginning April 1, 1962.

All reappraisals were made by the replacement cost less depreciation method of arriving at fair market value.   All structures were inspected, measured, and classified according to certain construction standards.   The replacement cost thus arrived at was then depreciated to reflect physical depreciation and functional obsolescence, which is deterioration of the property other than physical.

In this manner a fair market value of $22,980 was arrived at for all nine buildings on plaintiff's land.   The latter was given a value of $5,470 making a total fair market value of $28,450.   As it is agreed that all property in the city was assessed at 75% of market value, plaintiff's assessment was $21,400.

There was testimony before the Trial Court that, in addition to the replacement cost approach to fair market value used by the assessors, there are also the income and the market or comparable sales methods of determining such value.   The Court viewed plaintiff's property and four other farms recently sold and received evidence of their selling prices.   Witness Hyde, a professional real estate appraiser, using the comparable sales approach with some consideration given to the income method, valued plaintiff's property at $17,000.   The plaintiff, a real estate appraiser also, placed a value of $15,000 to $16,000 on his farm.

The Trial Court found the fair market value of plaintiff's farm to be $20,000 instead of $28,450 placed on it by the assessors.   We hold that the record amply supports the finding

of the Court. The defendant does not contend otherwise.

The defendant strongly maintains however that the order of the Court abating so much of plaintiff's tax for the years 1962 and 1963 as is based on an assessment in excess of $15,000 (75% of $20,000) was not warranted. Its brief succinctly states defendant's position as follows. "The petitioner at no point in the hearing . . . produced even a scintilla of evidence on the issue he alone raised that he was treated inequitably in the assessment, and that he was required to bear a disproportionate share of the burden of taxation in Claremont."

The plaintiff argues that, even assuming he failed to prove a disproportionate assessment, the defendant cannot question the sufficiency of the evidence to support a decree or a material issue in a case by motion to set aside the Court's decree as was attempted here by the defendant. *Hould* v. *Company*, 83 N. H. 474; *Webster &c. Bank* v. *Fuller*, 85 N. H. 186, 188. The rule invoked by the plaintiff has certain limitations and exceptions. *Eastman* v. *Waisman*, 94 N. H. 253, 254. It has frequently been relaxed in cases tried before the Court and especially where a single issue is plainly raised. *Kacavisti* v. *Sprague Electric Co.*, 102 N. H. 266, 268. We hold this is such a case.

To prevail in his petition for an abatement, the plaintiff had to prove that his tax was greater than it should have been with respect to the taxes of other property owners in the taxing district, that is, the city of Claremont. *Snow* v. *Sanbornton*, 102 N. H. 11. In other words he had the burden of showing that the assessment placed on his property was disproportionately higher in relation to its true value than was the case as to other property in the city. *Clark* v. *Middleton*, 74 N. H. 188; *Rollins* v. *Dover*, 93 N. H. 448, 450; *Bemis &c. Bag Co.* v. *Claremont*, 98 N. H. 446, 449.

The fact that the Trial Court finds as it did in this case, that the plaintiff's property had a lower fair market value than that placed on it by the assessors is not in and of itself grounds for an abatement. If other properties in the city were similarly overvalued by the assessors, there would be no disproportion in the plaintiff's tax burden. "He must go on and show that his valuation is disproportionate to that of other property in general." *Rollins* v. *Dover*, 93 N. H. 448, 450; *Hodges* v. *Kensington*, 102 N. H. 399, 400.

The assessment of a general property tax looks to the rais-

ing of a certain amount of money in the taxing district. "The rate at which this amount is to be raised is not one fixed by statute but is determined by the relation of the total appraised valuation of all taxable property to the total tax to be raised. Since total valuation bears directly on the rate, if each property is appraised at the same proportion to its full and true value, whether it be higher or lower than that value, the resulting taxes must be proportional. It is not when the appraised value of one property is greater than its true value but only when it is disproportionately higher in relation to that value than is the case as to other property in general, that its owner bears more than his share of the tax burden and is entitled to an abatement." *Brock* v. *Farmington*, 98 N. H. 275, 279.

Plaintiff's right is to have his property assessed upon the same standard of values as that applied in the assessment of other property in the city. *Rollins* v. *Dover*, 93 N. H. 448, 450. Consequently a petition for abatement necessarily involves a comparison of the ratio of plaintiff's assessment to market value, with the ratio of all the other assessments in the district to the market value of all other properties. If all market values are determined in the same manner and all assessments are at the same proportion of the market values there is no inequality. *Bemis &c. Bag Co.* v. *Claremont*, 98 N. H. 446, 452.

In *Hodges* v. *Kensington*, 102 N. H. 399, plaintiff produced evidence of the ratio between the assessments placed on four properties of others in the town and their market values as fixed by recent sales. From this evidence and the testimony of one of the town's selectmen that all assessments were made at 50 per cent of fair market value, the Court could find that plaintiff's property was assessed at a higher ratio to its market value than were the other properties in town and could properly decree an abatement.

Similarly in *Snow* v. *Sanbornton*, 102 N. H. 11, there was evidence that the selectmen adopted a recommendation of the Tax Commission that property in the town should be assessed at 50 per cent of its true and fair value. In addition there was evidence of the fair market value of a part of plaintiff's property which was sold and of the assessment placed thereon by the selectmen. From this and other evidence the Court could find "a general pattern to use as a yardstick in determining whether or not such assessments were excessive in proportion to assessments on other property in town." *P.* 13.

In the present case there was uncontradicted evidence that the replacement cost less depreciation method of determining fair market value was applied by the assessors to all the properties in Claremont. On cross-examination plaintiff's expert appraiser testified that if you do a complete community (as was the case here) by this method of determining market value "when it is properly done, every property will have an assessment among all property classes that will be similar or the same ratio as every other assessment to market value." There is no evidence that this approach to market value was applied differently to plaintiff's property than it was to all the other properties in the city. Nor was there evidence of assessments of other properties in Claremont which bore a lower ratio to market value than plaintiff's property.

In summary there was no evidence from which the Court could find that plaintiff's property was assessed other than upon the same standards of values as those applied in the taxation of any other property in the city or that the fair market value placed on plaintiff's property by the assessors was disproportionate to the valuation placed by them upon the other properties in Claremont. *Clark* v. *Middleton*, 74 N. H. 188.

Plaintiff argues however that an agreement made by the parties at the trial can be the basis for a finding of a disproportionate tax burden imposed on him. His counsel stated the following to the Trial Court: "the City agrees that the relationship of the valuation of properties in Claremont generally for those two years was 75 p. c. That is, the assessed valuation of property in Claremont was 75 p. c. of the fair market value." We interpret this agreement as an admission by the city that the assessors after determining the fair market value of properties in Claremont adopted 75 per cent thereof as the tax assessment value. In our opinion this agreement should not be interpreted to mean that the assessed valuations were 75 per cent of some absolute figure of true market value however determined, but rather were 75 per cent of market value as in fact determined by the assessors. See RSA 75:1.

It could be found from plaintiff's evidence that an appraisal of his property by other appraisers using different approaches to value from that used by the assessors in appraising all the properties in Claremont produced a lower fair market value than that found by the assessors. However there was no evidence from which the Court could find that the assessments on

the other properties in Claremont were at a different ratio to their true value than was the assessment on plaintiff's property. Having failed to prove that the valuation placed by the selectmen upon his property was disproportionate to the valuation placed by them upon other properties, the plaintiff was not entitled to an abatement. *Perry* v. *State Tax Commission,* 103 N. H. 264, 267.

> *Exception sustained; decree set aside.*

All concurred.