Merrimack
No. 6837

ROYAL GARDENS COMPANY

v.

CITY OF CONCORD

October 31, 1974

*Sulloway, Hollis, Godfrey & Soden* and *Michael M. Ransmeier (Mr. Ransmeier* orally) for the plaintiff.

*Paul F. Cavanaugh,* city solicitor, by brief and orally, for the defendant.

GRIMES, J. This appeal from rulings on petitions for abatement of property taxes raises issues of plaintiff's burden of proving disproportionality in city's assessment and of whether federal regulations of housing project should be weighed in valuing the project for real estate tax purposes. Three petitions for abatement of taxes assessed in 1970, 1971, and 1972 were consolidated and heard before a Master *(Leonard C. Hardwick,* Esq.). The master recommended plaintiff's taxes be abated a combined total of almost $38,000 for tax years 1970, 1971, and 1972. The Trial Court *(Grant,* J.) approved the master's recommendations and exceptions of both parties were reserved and transferred *(Bois,* J.).

Plaintiff owns a housing project which was partially funded and regulated under section 236 of the National Housing Act of 1968. 12 U.S.C.A. § 1715 z-1 (1969). Plaintiff has constructed fourteen buildings which house 150 apartments for rental primarily to low and middle income families. The Federal Housing Administration financed construction of the project by procuring a loan for petitioners for $2,546,200 to be paid off over forty years at an annual interest rate to petitioner of one and one-half percent. In exchange for the financing subsidy, plaintiff must charge rentals below market rates and is strictly limited as to the rate and amount of return it can realize from its investment. The master expressly ruled that value should be determined without

regard to the factor of federal subsidy or regulation, reasoning that to do otherwise would result in an unnecessary and unauthorized subsidy of the project by the city. Accordingly, in applying the income capitalization method of valuation, the master used an estimation of gross receipts the project would earn on the "open market" combined with a 16.96% capitalization rate determined by petitioner in accordance with accepted valuation methods. However, the plaintiff applied this rate, not to gross receipts from rentals on the open market as did the master, but to the lower rents which it claims are earned under HUD regulations.

I. In its appeal from the master's ruling, the city contends that under *Ainsworth v. Claremont,* 106 N.H. 85, 205 A.2d 356 (1964), plaintiff failed to prove disproportionality and therefore is entitled to no abatement. The court held in *Ainsworth* that proof assessors had placed a higher value on property than fair market value did not by itself suffice to prove disproportionality; rather, a petition for abatement also must prove the valuation of his property was disproportionately higher than that placed on the rest of the property in the city. We think the unique facts of this case place it outside the control of *Ainsworth.*

The master reported that the parties here, as they did in *Ainsworth,* agreed before trial "that real estate generally throughout the City was assessed at 85 percent of its true value in 1970 and 1971 and at 72 percent in 1972." Also as in *Ainsworth,* the parties disagree on appeal as to what they previously agreed to. Respondent-city contends the "true value" of the agreement represents merely value as actually determined by the town and not an absolute figure of true or fair market value. *Ainsworth v. Claremont, supra* at 89, 205 A.2d at 359. In other words, the city says it agreed only to the proportionality ratios of 85 and 72 percent and not to the fairness or accuracy of its assessment of other property in the city. Plaintiff asserts the agreement meant all other property in the city was accurately assessed at fair market value as required by statute. RSA 75:1. Plaintiff would thereby have to prove only that his property was valued at more than fair market value in order to meet the requirement of proving disproportional assessment.

Unlike the *Ainsworth* case, the master below specifically found that the agreement was as plaintiff contends. In three separate requests the city asked the master to find that the ratio agreement did not relate to an absolute figure of true market value but to market value as determined by the assessment. The master denied all three requests as being "not in accord with this agreement . . . ." Since the agreement was made off the record but in the presence of the master, we cannot disturb the master's finding as to the agreement.

II. This leaves the question whether the master erred in excluding from his consideration as a matter of law evidence of federal regulations governing this property. Generally, the rule as to what bears on value has always allowed the admission of all relevant and nonprejudicial evidence. RSA 75:1; *Trustee & c. Academy v. Exeter,* 92 N.H. 473, 33 A.2d 665 (1943). The estimation is to be based not on "artificial rules" but a consideration of all "relevant facts". *Grafton &c. Co. v. State,* 78 N.H. 330, 332, 100 A. 668, 669 (1917). In *Grafton &c. Co. v. State,* the factor of regulation was said to be relevant for valuation purposes. In *Public Service Company v. New Hampton,* 101 N.H. 142, 136 A.2d 591 (1957), this court overruled the plaintiff's argument that value for tax purposes could not exceed net book cost. The court upheld the town's approach of estimating value for tax purposes through a combination of methods and factors, including regulation. *Id.* at 145, 136 A.2d at 594. More recently in *Concord Natural Gas v. Concord,* 114 N.H. 54, 314 A.2d 679 (1974), this court rejected a stipulation of the parties that one of two methods had to be used to value plaintiff's gas mains for tax purposes. Most recently, in *New England Power v. Littleton,* 114 N.H. 594, 326 A.2d 698 (1974), the same rule was again upheld that when making value estimation relevant factors including federal regulations must be considered.

Considerable evidence was developed at the hearing on the nature and extent of the federal regulations. We cannot distinguish for valuation purposes a state and federally regulated utility from a federally regulated housing project which limits the income to be received by the owner. *New England Power v. Littleton supra.* The master should have weighed

the factor of regulation to the extent he found it relevant, but it was error to eliminate its consideration as a matter of law.

*Defendant's exception overruled;*
*plaintiff's exception sustained; remanded.*

KENISON, C.J., and DUNCAN, J., dissented; the others concurred.

DUNCAN, J., and KENISON, C.J., dissenting in part:

The issue considered in part II of the majority opinion arises because the plaintiff contends that consideration of the terms of its agreement with the federal government with respect to its mortgage for $2,546,200 would entitle it to a larger abatement than that recommended by the master. That agreement is designed, among other things, to provide for rentals which will produce earnings sufficient to pay the mortgage interest of 1%, and it restricts earnings to 11.11% of the mortgage and 6% on the equity.

The majority of the court sends the case back to the master on the ground that it was "error to not consider" the factor of "federal regulations governing [plaintiff's] property"; and this despite the fact that the master's report discussed the plaintiff's valuations reflecting the regulations, but ruled that "the municipality is not required to give consideration to the fact that this is a . . . project subject to [such] regulations". Reconsideration is ordered even though it is held that the regulations "need not be controlling", should be "weighed . . . to the extent found relevant", and are not intended "to undermine a local municipal tax base".

We would sustain the master's findings and rulings. Public utilities are subject to regulation as monopolistic enterprises affected by a public interest. Consequently as to them, regulation is a factor necessarily entitled to consideration in finding market value. *Public Service Co. v. New Hampton,* 101 N.H. 142, 136 A.2d 591 (1957). On the other hand, the rental of privately owned housing stands upon a different footing. The plaintiff's project is subject to regulation because the plaintiff agreed that it should be, not because the law required

it. The plaintiff agreed to limitations upon its income in order to finance its project upon favorable terms and to obtain other economic advantages.

The result from the standpoint of the plaintiff taxpayer does not differ materially from the situation where a long term lease proves to be unsatisfactory under prevailing economic conditions, by yielding a return below that prevailing on the current market. In such cases, the taxpayer owner may not require the taxing authority to abate its taxes because the owner's bargain proves to be improvident. "It is the capacity for earning income rather than the income actually derived which reflects 'fair cash value' for taxation purposes". *Marine Bank v. Tax Appeal Bd.*, 44 Ill. 2d 428, 256 N.E.2d 334 (1970). In applying the income approach to valuation, assessors are entitled to utilize the "economic rental" value in disregard of actual income. *Clayton v. County of L.A.*, 26 Cal. App. 3d 390, 102 Cal. Rptr. 687 (1972).

In *New Brunswick v. State of New Jersey Division of Tax Appeals*, 39 N.J. 537, 189 A.2d 702 (1963), the court recognized that "a long term lease . . . for an unfavorable rent will impair the selling price", but held that "the valuations of properties for local taxation cannot vary with the managerial successes or failure of the owners. Adjacent properties of equal potential cannot be assessed differently because one proprietor was more or less astute than the other." *See also Crossroads Center Inc. v. Commissioner of Taxation*, 286 Minn. 440, 176 N.W.2d 530 (1970); Annot. 96 A.L.R.2d 666 (1964) and Supp.

In our opinion the rulings of the master were not erroneous. Accordingly, we dissent from part II of the foregoing opinion.