Frank J. Kronenberg, J.
Petitioners have instituted this action seeking a review of the 1968 tax assessment upon certain premises under lease to Sears, Roebuck & Company.
The litigants have sought to justify their respective positions by using the “ Income Approach to Value ” in determining the fair market value of subject property.
The Department of Assessment and Taxation of the City of Lockport, New York appraised the subject property for $885,000 and assessed it for $442,500, in accord with its policy of assessing at 50% of the appraised value.
Petitioners’ experts show the fair market value as $1,029,800 (more than the city’s value!!). However, petitioners’ experts contend that due to a “ deficient lease ” the subject property has an estimated present value of $740,000 ($145,000 less than the city’s value).
In using the “ Income Approach to Value ” we must first concern ourselves with the ‘ ‘ income potential ’ ’ and then the lease agreement covering subject property and the extent to which said agreement may be permitted to influence the fair market value of said property.
The lease agreement was entered into between Stephen J. Sciciliano, individually and Sears, Roebuck & Company on January 6, 1965 and calls for an anmfal minimum rental of $107,800 over a 40-year period. (Twenty years plus an option of four separate and consecutive five-year periods), plus an additional rental of 2%% of the excess in sales above $4,792,906.67 and an additional rental for gross sales above $5,500,000.
*505 Petitioners’ Exhibit I (appraisal of Donald L. Brand, M.A.I. and Walter F. Marcus, M.A.I.) at page 13, under “ Income Approach ” cites the income of five other parcels and concludes:
‘ ‘ In comparing the above gross economic rents with the property under appraisment it is the appraisers conclusion that the subject property has a gross economic rent potential of $1.50 per square foot ’ ’, and they continue:
“ The percentage or overage clause contained in the lease were also considered. Overages at best are highly speculative particularly with the subject property * * *.
“ For reasons outline (in its Summary and Conclusion) * * * ‘ The appraisers have disregarded additional income from this source.’
“ The Subject property is leased at a rent of $1.10 (per) square foot for twenty years with four 5 year, options. ’ ’
Leasing the property for $1.10 per square foot when it had an economic potential of $1.50 per square foot produces a “ leasehold value ’ ’ of $.40 per square foot and this in turn evidences additional value and further indicates that the landlord did not secure the full economic potential from the premises.
Can we, for tax purposes, permit the owner of taxable property to create ‘ ‘ instant economic obsolescence ’ ’ by encumbering said property with an inadequate lease agreement? And then must the taxing authority “ bail ” him out? The court does not believe so.
Is not the value of the property the 11 sum of the whole ’ ’; the value to the lessor plus the value to the lessee ?
“ Basically, the valuation of a leased fee or leasehold is a matter of dividing the value of the real property, free of the lease, into separate values imputable to the fee and leasehold interests. The sum of the values of the fee, subject to the lease, and leasehold interests, tends to be the same as the value of the property free and clear. ’ ’ (Appraisal of Real Estate; American Institute of Real Estate Appraisers [4th ed.], p. 399.)
In discussing the apportionment of the fee owners’ interest and the leasehold interest petitioners’ appraisers conclude as follows:
“ Fee Owners........................ $740,000.00
Leasehold........................$289,800.00 ”
Is not the “ leasehold interest ” out of proportion with the “ fee interest ”?
Does not this clearly show that the rental established was inadequate and according to petitioners’ own experts does not *506 the tenant have a benefit of some $27,000 per year under the lease agreement?
Under an agreement wherein the landlord obtained the full economic rental of the premises, the leasehold interest of the tenant would be next to nil. If the owner does not command the full potential of his property, he cannot expect his fellow taxpayers to compensate him for the difference.
People ex rel. Gale v. Tax Comm. of City of N. Y. (17 A D 2d 225) is relevant to the issue before this court. Therein, the court points out (pp. 229-230): “ An outstanding lease may be a benefit or a detriment to the subject property, and thus its duration, covenants and the rental fixed are simply elements along with many other considerations used to arrive at the value of the property. The amount of rental fixed by a lease, even though negotiated at arm’s length, could be very misleading, as to the true value of property, for it is well known that many rental contracts may be at excessive or inadequate rentals because of poor business judgment on the part of one party or another.”
The court continues (p. 230):
‘ ‘ Of course, an outstanding bona fide lease and the rental income established thereby are matters to be considered in determining ‘ the full value ’ of the whole property, land and improvements. Value arrived at by capitalization of the fair rental value is, in ordinary cases, the surest guide to a sound appraisal.”
However, the use to which the property owner seeks to put his property and the fruits of his effort, or his lack of effort alone, cannot establish the value of the property in question.
“ By statute, it is provided that, ‘ All real property subject to taxation shall be assessed at the full value thereof ’ ’ ’
The court concludes by stating that “ The resulting tax is on the real property; its consequence falls upon the owner whose personal disabilities and restraints neither lessen nor increase the amount.” (p. 227.)
Thus, in arriving at the fair market value of the subject property, the court must take into account its rental potential, both the fee and leasehold value, not just the actual rent charged.
Had the landlord entered into a lease agreement that was consistent with the property’s full economic rental potential (i.e. $1.50 per sq. ft.) and if we still had a “ deficiency situation ”, the utmost consideration would have to be given the landlord. That is not the case here.
So in answer to what effect the lease agreement on subject property has upon the fair market value of said property for tax purposes, the court must conclude that it has no effect in *507 reducing the tax value since it does not measure up to the full income potential placed upon the property by.petitioners’ own experts and that in arriving at the fair market value of the premises the court must also consider the “ leasehold value
This being an application seeking the reduction of an assessment of $885,000 upon the subject property, it will suffice for the court to concern itself with whether or not the fair market value of the property is less than $885,000.
It is interesting to note that the Marine Trust Company of Western New York (now Marine Midland) took a mortgage on subject premises on August 20, 1965 for $1,300,000. If this was based on 75 % of value it would make the premises worth over $1,700,000. (However, the court is aware that there may have been other considerations between the parties.)
Petitioners themselves have established a value of $1,029,800, the same including a $289,800 ‘1 leasehold value ’’which this court cannot and will not discount.
After a review of all of the exhibits, testimony, and papers herein, this court must and does conclude that the fair market value of the subject property is no less than $885,000, and that therefore, petitioners’ application for a reduction of said assessment must be and hereby is denied.