[Civ. No. 38227. Second Dist., Div. Five. June 26, 1972.]

BENJAMIN CLAYTON, as Trustee, etc., et al.,
Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., and Howard L. Schweitzer for Plaintiffs and Appellants.

John D. Maharg, County Counsel, A. R. Early and DeWitt Clinton, Assistant County Counsel, for Defendants and Respondents.

## OPINION

KAUS, P. J.—Plaintiffs taxpayers appeal from an adverse judgment in an action for a refund of part of property taxes paid for the 1967-1968 fiscal year on real property located in the City of Whittier.

The property in question is improved with a department store leased to the May Company for 30 years starting in August 1965. The lease agreement gives the May Company an option to renew the lease for 60 additional one-year terms. In other words, should it choose to exercise its options, the lessee has the right to exclusive possession of the realty until the year 2055.

Boyd White, a deputy assessor, determined that on the March 6, 1967, tax date, the property had a fair market value of $5,420,000. This value was accepted by the assessment appeals board of the county.

Two appraisers who testified before the board on behalf of plaintiffs determined that the fair market value of the property was $3,300,000 or $3,600,000. In spite of certain fringe issues raised in the briefs[1] the basic reason for the appraisers' differences is that White considered the fact that the May Company lease did not generate the economic rent of the property, a circumstance which plaintiffs' appraisers more or less ignored.

The question which is determinative of this appeal is simply this: in determining the "full cash value" (Cal.Const., art. XIII, § 37; Rev. & Tax. Code, § 110) of plaintiffs' fee interest in the real property, should the appraiser take into account the "economic rental" (De Luz Homes, Inc. v. County of San Diego, 45 Cal.2d 546, 558 [290 P.2d 544]), even if—as here—the actual rental income from the property was below the economic rental? Put differently the question is whether because plaintiffs made a bad lease[2] with the May Company, the property must be assessed at a lower figure than would be appropriate if they had not given up their right to possession or had negotiated for the going rent.[3]

■■■ White had appraised the property using the three traditional approaches, that is replacement cost, income and market data. In connection with the income approach he used the economic rent rather than the rent stipulated under the May Company lease.[4] He familiarized himself with the rent paid on about 10 comparable structures. Using that approach he arrived at a figure of $5,290,000. The market data approach yielded a market value of $5,560,000, while the replacement cost approach resulted in the $5,420,000 figure which represented his ultimate opinion.

[1] In the briefs each party advances certain arguments concerning the sufficiency of the evidence and the quality of the testimony adduced in support of the respective legal positions. We have carefully examined these contentions. Except to the extent that they pose the basic legal problem to be discussed in this opinion from another angle, they have no merit. Each party introduced substantial legally admissible evidence on his theory of what the law concerning the applicable standards of valuation ought to be.

[2] The record presents a substantial question whether the May Company lease was an arms' length transaction. Admittedly the lessee financed the building of the department store with a loan of $4,000,000 which loan is presently secured by a deed of trust repayable during the 30-year term of the lease. The loan bears interest at five percent, a figure which was 1½ percent below market at the time the loan was made.

[3] As one New York trial judge put it, the question is whether an owner who does not "command the full potential of his property [can] expect his fellow taxpayers to compensate him for the difference." (Petition of Ernst, 58 Misc.2d 504, 505 [295 N.Y.S.2d 712, 715].)

[4] He defined economic rent as "what a property would rent for on the open market if it was negotiated as of the first Monday of March 1967."

On cross-examination White conceded, of course, that in view of the fact that the May Company lease did not yield the economic rent of the subject property, an informed buyer would not pay $5,420,000 for the property. Plaintiffs rely on this testimony as if, by giving it, White had given away the county's case. The fact is, however, that White was very careful to state that his answer was based on "the lease not being economic. . . ."

Just as White's figure was based on the economic rent of the property, so did plaintiffs' appraisers merely look to the terms of the May Company lease; yet one of them admitted that a prudent investor would not regard that lease as a good one.

As we see it the central question on this appeal was answered by the Supreme Court in *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 562-566. The interest involved in that case was a possessory interest arising out of a lease of exempt property. ▉ The principle of the case applies, nevertheless. Said the court: "In practice, assessors usually enter the entire value of land and improvements on the tax roll without distinction between possessory and reversionary interests, and since this practice results in a single amount reflecting both interests on the roll, the constitutional mandate that all property be taxed is obeyed. (*San Pedro, etc. R. R. Co.* v. *City of Los Angeles,* 180 Cal. 18, 22 [179 P. 393].) ▉ As between reversioners and possessors payment of the tax is a private arrangement. (*Simms* v. *County of Los Angeles,* 35 Cal.2d 303, 313 [217 P.2d 936]; *San Pedro, etc. R. R. Co.* v. *City of Los Angeles, supra,* 180 Cal. 18, 22; *Lick* v. *Austin,* 43 Cal. 590, 594-596.)" (*De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d at p. 563. See also *H. & W. Pierce* v. *Santa Barbara Co.,* 40 Cal.App. 302, 306 [180 P. 641].)

Plaintiffs point to a certain passage in *De Luz* where the court did state that with respect to the interests there involved the appraiser erred in using imputed, rather than actual income. (*Id.* p. 572.) In *De Luz* there was no question of the actual income being less than the economic rent. Further the passage recognizes that allowance may have to be made for income derived from "enterprise activity." There is abundant evidence in the present record that the bonus value of the May Company lease to the lessee is the result of enterprise activity by plaintiffs of a rather negative sort.

Plaintiffs place much reliance in *People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.,* 253 Cal.App.2d 870 [62 Cal.Rptr. 320] where it was held that in appraising real property for condemnation purposes, the appraiser could or should take into account the value of an existing leasehold that was favorable to the condemnee. Section 1246.1 of the Code of Civil Procedure

which permits the condemner to elect "to have the amount of the award for said property first determined as between [condemner] and all defendants claiming any interest therein" was held to be procedural only. The court felt compelled to arrive at this result by the "fundamental nature of the constitutional requirement of just compensation." (*Id.*, p. 879.)

Skipping over the fact that *Lynbar* was a condemnation action while this case involved an appraisal "at full cash value" for tax purposes, it is evident that the actual holding of *Lynbar* cannot help plaintiffs.[5] Whatever the extent of that holding, the plain fact is that *Lynbar* did not involve a lease with a bonus value to the lessee, but one where the actual rent substantially exceeded the economic rent. What plaintiffs must rely on is a dictum in the per curiam opinion denying a rehearing in *Lynbar* which appears to say that if the lease had had a bonus value, it would reduce the condemnation award. ". . . If, on the other hand, the actual rental under the existing lease is less than such fair rental value, ordinarily the fair market value of the parcel taken will be reduced accordingly and the condemner then pays less by way of just compensation." (*Id.*, p. 884.)

Taking this dictum at face value plaintiffs appear to argue that *De Luz* and the authorities cited therein are no longer good law for the reason that if the subject property were to be condemned, the condemner would acquire it at a figure below the value of the fee. That premise is so questionable as a matter of condemnation doctrine that we decline to use it as a springboard for even more questionable taxation law.[6]

---

[5] Just what *Lynbar* held seems to be a matter of dispute. In Kanner, *And Now, for a Word from the Sponsor: People v. Lynbar, Inc., Revisited,* 5 University of San Francisco Law Review 39, successful counsel in *Lynbar* modestly argues that the case merely holds that the trial court did not err in permitting each side to present its theory of valuation to the jury. (*Id.*, p. 41-53.) Strict common law tradition of "how to read a case" supports him if *Lynbar* is read in the procedural context in which the case arose. Undoubtedly, however, most readers of the decision will not interpret it so narrowly.

[6] If real property worth $100,000 is subject to a lease at the economic rent, the lease—by definition—is neither a burden on the lessee, nor does it have any bonus value. The owner of the property would therefore receive the entire award, $100,000. If, however, the lease has a bonus value of $25,000 then—if the law is to keep the promise of the *Lynbar* dictum—the condemner will only suffer a judgment of $75,000. This however, means that the court will be $25,000 short when, after the condemner is discharged, it attempts to award both the lessor and the lessee just compensation for their respective interests. This result is used as a *reductio ad absurdum* of *Lynbar* in Horgan and Edgar, *Leasehold Valuation Problems in Eminent Domain,* 4 University of San Francisco Law Review 1, 30-31. Mr. Kanner (*op. cit.* fn. 5, p. 53) argues persuasively that the holding of *Lynbar* compels no such absurdity.

The only case brought to our attention or discovered by our independent research which has ever applied the rule visualized in the *Lynbar* dictum is *Matter of City of New York (Maxwell)* 15 App.Div.2d 153 [222 N.Y.S.2d 786]. Curiously enough the very same court which decided that case is one of the several jurisdictions which have

Plaintiffs cite no case and we have found none which, as a matter of tax law, supports their appraisers' apparent theory that the existing lease, however much it may be below market, is the only relevant factor to be considered. Problems in this area have been before the courts many more times than the briefs of either side reveal. The cases are fully annotated in 96 American Law Reports Second, page 666. It would be wishful thinking to say that the authorities are entirely in accord on the weight to be given to an existing bad lease. Some of the differences in the cases are probably explainable by the different procedural contexts in which the question arose and, more to the point perhaps, by different governing constitutional and statutory provisions. We are quite satisfied that the law is correctly stated in the several cases cited in the footnote[7] and that it was correctly applied by the trial court here.

During the oral argument of this case we put to counsel for plaintiffs a hypothetical situation in which—assuming plaintiffs' basic premise to be sound—two owners of property could escape property tax altogether, or nearly so, by leasing their respective properties to each other at rentals so low that the bonus value of the leases would negative any value in the reversions. One answer that was made to the effect that the hypothetical did not assume bona fide leases. If that is, indeed, an answer, the assessor would have to go into the history behind every lease on property assessed. The absurdity of that possibility was adverted to in *Richmond, F. & P. R. Co.* v. *Commonwealth of Virginia,* 203 Va. 294 [124 S.E.2d 206], where the Supreme Court of Appeals of Virginia quoted with approval from the opinion of that state's Corporation Commission: " '. . . If I own

held against plaintiffs' basic contention in this case. (See *People* ex rel. *Gale* v. *Tax Comm.,* 17 App.Div.2d 225, 230-231 [233 N.Y.S.2d 501, 506-507].) We need not determine to what extent the distinction of *Maxwell* in the later decision robs it of any significance as an example of an application of the theory of the *Lynbar* dictum.

We do not consider *County of Los Angeles* v. *American Sav. & Loan Assn., ante,* page 7 [102 Cal.Rptr. 439], filed by division one of this court on June 13, 1972, and, of course, not yet final an application of the *Lynbar* dictum. Without analyzing the case in detail the condemner's successful acquisition of the property for less than the value of the fee resulted from the fact that the property was under lease to the condemner for eight and one-half years after the day of valuation and that the lease did not permit its highest and best use.

[7]*Springfield Marine Bank* v. *Property Tax Appeal Bd.,* 44 Ill:2d 428, 430-431 [256 N.E.2d 334, 336]; *Donovan* v. *City of Haverhill,* 247 Mass. 69, 71 [141 N.E. 564, 565, 30 A.L.R. 358]; *Crossroads Center (Rochester), Inc.* v. *Commissioner of Taxation,* 286 Minn. 440, 446-447 [176 N.W.2d 530, 535-536]; *New Brunswick* v. *New Jersey Div. of Tax Appeals,* 39 N.J. 537, 544 [189 A.2d 702, 706]; *People* ex rel. *Gale* v. *Tax Comm.,* 17 App.Div.2d 225, 230-231 [233 N.Y.S.2d 501, 507]; *Petition of Ernst,* 58 Misc.2d 504, 505-506 [295 N.Y.S.2d 712, 715-716]; *In re Pine Raleigh Corp.,* 258 N.C. 398, 403-404 [128 S.E.2d 855, 859-860]; *Richmond, F. & P. R. Co.* v. *Commonwealth of Virginia,* 203 Va. 294, 300-301 [124 S.E.2d 206, 211]; cf. *McCrory Stores Corp.* v. *Asbury Park,* 89 N.J.Super. 234, 242-244 [214 A.2d 526, 531-532].

land worth $10,000 I cannot escape taxation by renting it to a friend for one dollar a year. *And tax assessors cannot be expected to ascertain whether the lessee is a friend or a controlling stockholder of the lessor.* The property subject to taxation is the fee simple and not the reversion after the expiration of a lease.' " (203 Va. at p. 301 [124 S.E.2d at p. 211]. Italics added.)

Without giving it undue importance, one final consideration in favor of affirmance is the administrative construction given to the issue before us (*Select Base Materials, Inc.* v. *Board of Equal.,* 51 Cal.2d 640, 647-648 [335 P.2d 672]).

Article XIII, section 13 of the state Constitution commands the Legislature to "pass all laws necessary to carry out the provisions of" the Constitution's article on revenue and taxation. In section 15606 of the Government Code the Legislature has mandated the State Board of Equalization to "prescribe rules and regulations to govern local boards of equalization when equalizing, and assessors when assessing." The board, in turn, has promulgated the following rule, directly applicable to the question before us: "In valuing property encumbered by a lease, the net income to be capitalized is the amount the property would yield were it not so encumbered, whether this amount exceeds or falls short of the contract rent and whether the lessor or the lessee has agreed to pay the property tax." (Cal.Admin.Code, tit. 18, ch. 1, subch. 1, rule 8(d).)

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.