[No. A022913. Sixth Dist. May 3, 1985.]

ALFRED E. CARLSON, as Assessor, etc., Plaintiff and Appellant, v.
ASSESSMENT APPEALS BOARD I FOR THE COUNTY OF SANTA
CLARA, Defendant and Respondent;
WALTON DISTRIBUTION SERVICES, INC.,
Real Party in Interest and Respondent.

**COUNSEL**

Donald L. Clark, County Counsel, Thomas Wm. Cain, Deputy County Counsel, and Byron D. Athan for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Timothy G. Laddish, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Harvey W. Stein for Real Party in Interest and Respondent.

OPINION

AGLIANO, J.—

### Introduction

This action follows a proceeding before respondent Assessment Appeals Board I for the County of Santa Clara (Board) in which the Board reduced the tax assessment on property owned by real party in interest, Walton Distribution Services, Inc. (Walton). Plaintiff Alfred E. Carlson, Assessor of the County of Santa Clara (Assessor), filed a petition for writ of mandate in the superior court to vacate the reduction. The petition was denied and the Assessor has filed a timely appeal.

The question presented is this: Did the Assessment Appeals Board, in determining the "full cash value" of the taxpayer's property, lawfully give effect to restrictions placed upon the property by agreement of the owner and his seller? We answer in the negative and accordingly reverse the trial court's judgment denying the assessor's petition.

### Facts

On January 1, 1980, Walton entered into a written agreement with Standard Realty and Development Company (Standard) to purchase a 4.9 acre parcel of unimproved land in Milpitas for $323,830. The agreement required Walton to: construct a warehouse of not less than 60,000 square feet on the property within 2 years or any extension not to exceed 21 years; contract with Standard's parent company, Western Pacific Railroad, for rail services to the warehouse; pay all costs incident to providing spur track services to the property; and grant Western Pacific a railroad easement thereon. Should Walton fail to construct the warehouse and purchase spur track services, Standard had the option to repurchase the land for the price sold. Walton could neither assign the agreement nor convey the property without Standard's prior written consent.[1] The deed incorporating these restrictions was recorded on January 20, 1981.

On March 26, 1982, Walton was given notice that the "full cash value" of its property for assessment purposes was $1,084,000 for the 1981-1982 tax year. The Assessor did not give effect to the restrictions set forth in the agreement between Walton and Standard. Instead, the Assessor appraised the property as a "fee simple unencumbered" using the comparable sales method.

---

[1] Walton so characterized the effect of the agreement in its application to the Board for changed assessment.

Walton appealed to the Board and argued (1) that the Assessor utilized an improper method of valuation and (2) that comparable sales of other real property supported Walton's lower estimate of the property's value.

After hearing, the Board made the following findings and conclusions: "I [¶] The applicant introduced evidence that the property herein is restricted in its use by the voluntary action of the applicant and the party from whom the property was purchased. [¶] II [¶] The Board finds that these restrictions adversely affect the value of the subject property. [¶] III [¶] Based upon the foregoing evidence and rules, as well as the other evidence introduced into the hearing, the Board finds that the Assessor's determination of full cash value is incorrect and should be lowered to $542,323."

*Discussion*

A. *Standard of Review*

■ Walton first asserts that the appellate court may not independently weigh the evidence in this case, but must apply the substantial evidence rule. (*A. F. Gilmore Co.* v. *County of Los Angeles* (1960) 186 Cal.App.2d 471 [9 Cal.Rptr. 67].) However, where the legality of the valuation method used by the assessor is in issue, the scope of judicial review is not limited to the evidence. The Supreme Court in *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354], provided the applicable standard of review as follows: "[W]hen the taxpayer challenges the validity of the valuation method itself, the trial judge is faced with a question of law. [Citations.] That question . . . is whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law. . . ." In the instant case, the Board considered the privately imposed restrictions on use in determining the "full cash value" of the property. The Assessor has objected to this valuation method and we are faced with a question of law; hence the substantial evidence rule is not applicable. We must determine whether the method was arbitrary, in excess of discretion, or in violation of the standards prescribed by law.

B. *Validity of Valuation Method*

Article XIII, section 1, subdivision (a), of the California Constitution provides that all property "shall be assessed at the same percentage of fair market value." "Fair market value" or "full cash value" is statutorily defined as, "the amount of cash or its equivalent which property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other

and both with knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions upon those uses and purposes." (Rev. & Tax. Code, § 110.)

 Revenue and Taxation Code section 402.1 defines the type of "enforceable restrictions" which the Assessor is required to consider in determining the value of property. While this section sets forth a nonexclusive list of restrictions, these examples consist solely of restrictions imposed by government.[2]

Furthermore, section 402.1 itself manifests the legislative intent regarding the type of applicable property restrictions. It states in part that the purpose of the section "is to avoid an assessment policy which, in the absence of special circumstances, considers uses for land which legally are not available to the owner and not contemplated by government, and that *these sections are necessary to implement the public policy of encouraging and maintaining effective land use planning.*" (Italics added.)

In the instant case, no public policy regarding land use planning is involved. The public derives no benefit whatsoever as a result of these particular restrictions. Rather, the restrictions were imposed solely for the profit and benefit of Standard and its parent company, Western Pacific Railroad.

 Walton contends that the restrictions in the case at bar should be treated in the same manner as a "negative" easement. However, no authority is cited for the proposition that a negative easement reduces the "full cash value" of the servient tenement for tax assessment purposes and our research has failed to disclose the existence of any such authority.[3]

---

[2]Revenue and Taxation Code section 402.1 provides in pertinent part: "In the assessment of land, the assessor shall consider the effect upon value of any enforceable restrictions to which the use of the land may be subjected. Such restrictions shall include, but are not limited to: (a) zoning; (b) recorded contracts with governmental agencies other than those provided in Section 422; (c) permit authority of, and permits issued by, governmental agencies exercising land use powers concurrently with local governments, including the California Coastal Commission and regional coastal commissions, the San Francisco Bay Conservation and Development Commission, and the Tahoe Regional Planning Agency; (d) development controls of a local government in accordance with any local coastal program certified pursuant to Division 20 (commencing with Section 30000) of the Public Resources Code; (e) development controls of a local government in accordance with a local protection program, or any component thereof, certified pursuant to Division 19 (commencing with Section 29000 of the Public Resources Code; and (f) environmental constraints applied to the use of land pursuant to provisions of statutes."

[3]In discussing claims for prescriptive easements, California courts have observed that the law does not require an easement to be separately assessed. (*Biggs Ditch Co.* v. *Jongste* (1944) 24 Cal.2d 298, 303 [149 P.2d 1]; *Welsher* v. *Glickman* (1969) 272 Cal.App.2d 134, 137 [77 Cal.Rptr. 141]; *Silva* v. *Hawn* (1909) 10 Cal.App. 544, 551, 552 [89 Cal.Rptr. 134].)

While prior cases have not addressed the specific issue before us, we are guided by the views expressed by California courts regarding tax assessment principles in other contexts.

In *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546 [290 P.2d 544], which involved the assessment of a possessory interest of a lessee of tax exempt property, the court noted that: "In practice, assessors usually enter the entire value of land and improvements on the tax roll without distinction between possessory and reversionary interests, and since this practice results in a single amount reflecting both interests on the roll, the constitutional mandate that all property be taxed is obeyed. [Citation.] As between reversioners and possessors payment of the tax is a private arrangement." (*Id.*, at p. 563.)

The *DeLuz* court also observed\ that regardless of the specific conditions affecting the value of the property to the individual owner, the assessment method for property tax purposes must be objective. "The present owner may have invested well or poorly, may have contracted to pay very high or very low rent, and may have built expensive improvements or none at all. . . . [S]ince . . . the legislative standard of value is 'full cash value,' it is clear that whatever may be the rationale of the property tax, it is not the profitableness of property to its present owner. If a purchaser would buy a given property on an open market, the property has a value equal to the price such purchaser might be expected to pay." (*Id.*, at p. 566.)

Relying on *De Luz*, the court in *Clayton* v. *County of Los Angeles* (1972) 26 Cal.App.3d 390 [102 Cal.Rptr. 687], disregarded a private agreement reducing the property's value. The issue in *Clayton* was whether in determining "full cash value" the assessor should take into account the economic rent even though the actual rent stated in the lease was lower than the economic rent. The court held that the parties to a lease cannot escape the full burden of taxation by agreeing upon a rent that was less than market value.

Walton contends that *Clayton, supra,* 26 Cal.App.3d 390, is not authority for the Assessor's position since in *Clayton* the "full cash value" of the property was determined independently of the lease, while in the present case what Walton believes to be the "full cash value" was established by the terms of the sale and the price paid. We do not find this distinction persuasive. As in *Clayton,* the "full cash value" of Walton's property can be determined independently of the restrictions.

In another case involving a leasehold interest, the court stressed the importance of establishing a policy of uniform tax assessment. "Just as asses-

sors are not bound by private agreements, they should not be frustrated or hindered in performing their vital functions by the necessity of ferreting out the often undisclosed and secret intentions of lessors and lessees relative to the terms of a lease. For the most part, assessors must be allowed to act on the basis of outward appearances." (*Trabue Pittman Corp.* v. *County of L. A.* (1946) 29 Cal.2d 385, 392 [175 Cal.Rptr. 512].)

Other jurisdictions have addressed the issue before us and have resolved it against the taxpayer. In *NeBoShone Ass'n* v. *State Tax Commission* (1975) 58 Mich.App. 324 [227 N.W.2d 358], the taxpayer argued that a restriction on the sale of property to a purchaser or purchasers agreeable to a majority of owners should be considered for tax assessment purposes. The court held otherwise, noting that "[a] private individual could not self-impose a restriction whereby he might be able to avoid or limit paying his just share of the ad valorem taxes." (*Id.*, at p. 363.)

The court in *Hoover* v. *State Bd. of Equalization* (Tenn.App. 1972) 579 S.W.2d 192, held that a deed restriction preventing the sale or lease of property for a period longer than one year did not constitute legal restrictions on use to be considered in determining valuation. The court recognized that if such restrictions were considered, it "could allow property owners to effectively control the valuation of their properties for taxation purposes by careful imposition of limited restrictions in the deeds to their properties." (*Id.*, at p. 196.)

 Another factor to consider is the administrative construction of Revenue and Taxation Code sections 110 and 402.1. Government Code section 15606 authorizes the State Board of Equalization to prescribe rules and regulations governing local boards of equalization and assessors in performance of their duties.[4] The Assessor's handbook contains these regulations, which are also made binding on the Assessment Appeals Board. (Cal. Admin. Code, tit. 18, § 324.)[5] In discussing the regulations issued by an administrative agency, the California Supreme Court in *Coca Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1] stated: "Although not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforce-

---

[4]The State Board of Equalization has filed a brief in support of the Assessor in the instant case on the grounds that the trial court's judgment violates California property tax principles and would encourage collusive tax avoidance.

[5]We refer to Assessor's Handbook 501, General Appraisal Manual, dated 1975, which was submitted as evidence to the Board. The handbook was subsequently revised in September 1982. However, the only relevant material difference is that the term "fee simple unencumbered" has been changed to the term "fee simple absolute estate."

ment and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. [Citations.]" Thus, a court may properly consider the assessor's handbook in determining the appropriate method of valuation. (*Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163, 180 [116 Cal.Rptr. 160].)

The handbook provides that "in the appraisal of property for taxation the rights to be appraised are the fee simple unencumbered rights." (Handbook, p. 18.) A "fee simple unencumbered estate" is defined as "[t]he possession of all the rights by a private individual subject only to limitations imposed by government . . . . Limitations imposed by government include property taxation, police power, eminent domain, and escheat." (Handbook, p. 17.)

■ We conclude, in light of the principles stated above, that the Board erred in its determination of the subject property's value. The Board should not have considered the privately imposed restrictions in this case, and for good reason. Scrutiny of the transaction between seller and buyer discloses that the Board's narrow focus on the interest acquired by the buyer Walton provided a distorted notion of value. Ownership of title in fee simple absolute includes the rights, subject to governmental restrictions, of full use and disposition of the property. (2 Miller & Starr, Current Law of Cal. Real Estate (1977) §§ 15:3, 15:4, pp. 600-602.) Walton did not acquire complete rights of fee ownership. However, valuable interests in the property were reserved by Standard and to Standard's parent company, Western Pacific Railroad.

Thus, the "fair market value" or "full cash value" of the property to be assessed is properly determined, as the Assessor contends, by considering the value of the fee simple absolute which includes the combined interests of Walton, Standard and Western Pacific. This approach comports with the traditional real property concept that "a reservation allows a grantor's whole interest in the property to pass to the grantee, but revests a newly created interest in the grantor." (*Willard* v. *First Church of Christ, Scientist* (1972) 7 Cal.3d 473, 476 [102 Cal.Rptr. 739, 498 P.2d 987]; citing 4 Tiffany, The Law of Real Property (3d ed. 1939) § 972.)

■ At oral argument, Walton suggested that it would be appropriate to separately assess Standard for its interest in the property. Separate legal interests in property, however, will not affect the manner of assessment, because the assessment is against the property itself, and to reiterate the holding in *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 563, payment of the tax should be a matter of "private arrangement" among the owners of various interests in the property.

■ At the hearing before the Board, the Assessor introduced evidence of comparable sales which supported the valuation determined by the Assessor. Walton's only objection to this evidence was that the properties in question were not subject to private restrictions. Citing *Jones* v. *County of Los Angeles* (1981) 114 Cal.App.3d 999 [170 Cal.Rptr. 879], Walton asserts that the Assessor must consider properties with similar restrictions when employing the comparable sales method. *Jones* is distinguishable, however, because in that case the property in question was located in a federal park and local government had designated the property as "open space," preventing further development of the property. Thus, we return to a situation of governmental, not private restrictions.

Walton, on the other hand, introduced evidence of two prior sales embodying terms substantially identical to the sale of the property at hand. Since restrictions imposed by private individuals on the use of real property need not be considered by the Assessor in determining its "full cash value," the only relevant evidence before the Board supported the Assessor's valuation of Walton's property.

For the foregoing reasons, we hold the valuation method accepted by the Board and the trial court was in violation of the standard prescribed by law and the judgment must be reversed. The cause is remanded with directions to the trial court to issue a peremptory writ of mandate vacating the decision of the Board and remanding the matter to the Board for determination of the "full cash value" of the subject property in a manner consistent herewith.

Brauer, J., concurred.

PANELLI, P. J.—I concur in the judgment because I believe the Assessor was correct in his assessment of value based on a proper consideration of comparable properties. However, I concur specially because I believe the majority opinion's holding concerning the effect of valid deed restrictions is too broad and not essential to the resolution of this matter.