JOHN R. SHERIDAN *v.* TOWN OF KILLINGLY
(SC 17366)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued February 14—officially released May 23, 2006

*Linda L. Morkan,* with whom were *Gregory W. McCracken* and, on the brief, *Timothy D. Bates,* for the appellant (defendant).

*Michael A. Zizka,* with whom was *Kari L. Olson,* for the appellee (substitute plaintiff).

*Opinion*

SULLIVAN, C. J. This appeal arises from an action brought by the plaintiff, John R. Sheridan,[1] against the defendant, the town of Killingly (town), challenging the town's tax assessment of real property owned by the plaintiff in the town for the years 2002 and 2003. The trial court concluded that the town's assessment was excessive and rendered judgment for the plaintiff. The town appeals from that judgment, claiming that the trial court improperly concluded that the property should have been valued by capitalizing the actual rental income of the property and that the town should not have considered the value of the leasehold interest. The town further claims that, if the court had applied the proper valuation approach, the plaintiff could not have met his burden of proving that the valuation was excessive. We conclude that the trial court improperly determined that, as a matter of law, the town could not consider the value of the leasehold interest in determining the value of the property for tax assessment purposes. We further conclude that the case should be remanded so that the court may make findings of fact under the proper legal standard.

The record reveals the following relevant facts and procedural history. The plaintiff owns property at 1699 Upper Maple Street in Killingly (property). The 202 acre property partially surrounds Alexander Lake and consists of eighty-three acres of land officially designated as open space; thirty-one acres divided into 274 leasehold tracts, each approximately one-tenth of an acre in size; undeveloped woodlands; a leased restaurant; the plaintiff's family residence; and a number of buildings that are no longer in use. The tenants on the leasehold tracts

---

[1] During the pendency of this case, John R. Sheridan died and the trial court substituted John L. Leader, Jr., the executor of Sheridan's estate, as the plaintiff.

lease the land from the plaintiff and own all the buildings and improvements located thereon. Each lease has an initial term of ten years with an option to extend the term subject to further negotiation. The leases are due to expire in 2007.

The property is located in a special overlay zone known as the Alexander Lake zoning overlay district. The district was created because the leasehold tracts do not meet the minimum lot size requirements of the underlying low density zone. The special zone allows tenants to modify preexisting structures without obtaining a variance. Because the tracts do not meet the minimum lot size for the underlying zone, they cannot be subdivided and sold as separate lots.

The property had a total assessed value of $1,150,600 on the town's October 1, 2001 grand list. On January 14, 2003, the town notified the plaintiff that it had completed a revaluation of all of the town's real property for the October 1, 2002 grand list and the assessed value of the plaintiff's property was now $9,844,210.[2] The plaintiff appealed from the assessment to the town's board of assessment appeals (board), and the board thereafter notified the plaintiff that it had elected not to conduct an appeal hearing, as authorized by General Statutes § 12-111. The plaintiff then appealed from the board's decision to the trial court pursuant to General Statutes § 12-117a.

At trial, the plaintiff's expert appraiser, Robert R. Morra, testified that, because the property could be sold only as a single parcel and had unique characteristics that made a comparable sales approach infeasible,

[2] The assessed value of real property is equal to 70 percent of its "present true and actual value . . . ." See General Statutes § 12-62a (b) ("[e]ach such municipality shall assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value, as determined under section 12-63").

he believed that an income capitalization approach to valuing the portion of the property subject to the residential leases was appropriate.[3] In 2002, the property generated $12,000 in rental income from the restaurant and $499,118 in rental income from the leasehold tracts, for a gross income of $511,118. Morra subtracted a 3 percent rent loss deduction from this amount for an effective gross income of $495,784. He then deducted expenses in the amount of $272,608, for a net income of $223,176. Using a capitalization rate of 9.82 percent, Morra testified that the value of the portion of the property subject to the residential leases was $2,273,000. He added to this the value of the plaintiff's family residence, $82,000, for a total property value of $2,355,000.

The town's expert appraiser, Stephen R. Flanagan, used a hybrid approach in valuing the portion of the property subject to the leases. He calculated the value of the lessor's interest by using the income capitalization approach and he calculated the value of the tenants' leasehold interest by using a comparable sales approach. Flanagan concluded that using this hybrid approach was necessary because the town's property tax assessor had provided him with information that a number of residential tenants had sold their leasehold interest in the tracts, which consisted of any improvements on the tracts plus an assignment of the lease, for amounts greater than would have been expected if the actual rents had reflected fair market value. The assessor reasoned that, if the rents had reflected fair market value, then an arm's-length purchaser of an

---

[3] "The income capitalization approach to value consists of methods, techniques, and mathematical procedures that an appraiser uses to analyze a property's capacity to generate benefits (i.e., usually the monetary benefits of income and reversion) and convert these benefits into an indication of present value. . . . It follows that the higher the contract rent, the higher the income expectancy and the higher the property valuation." (Citation omitted; internal quotation marks omitted.) *First Bethel Associates* v. *Bethel*, 231 Conn. 731, 739, 651 A.2d 1279 (1995).

assignment of the lease would not have paid a premium for the leasehold interest above the value of the improvements. Because the value of the improvements was minimal in several instances, and because several purchasers had removed the existing improvements immediately after taking possession of the land, the assessor concluded that the amount paid by the purchasers indicated that the value of the leaseholds exceeded the value of the improvements and the yearly rent combined. Flanagan concluded that using an income capitalization approach based on the actual rental income would not capture the full fair market value of the property as reflected in these sales.

To calculate the income capitalization portion of the value of the property, Flanagan used an average rent of $1800 per leasehold tract, multiplied by 274 tracts, for a total of $493,200 in gross rental income.[4] He then subtracted $153,000 in expenses and a 2 percent reserve for repairs, leaving approximately $330,000 in net income. Using a capitalization rate of 8 percent, Flanagan calculated that the "landlord's" interest in the property subject to the residential leases was worth $4,125,000, or approximately $15,000 per tract.

To calculate the value of the leasehold interest, Flanagan reviewed five sales of leasehold tracts in which the buyer had removed the existing improvements. He determined that the average sale price was $35,000 per tract. He concluded, therefore, that the value of the leasehold interest of each of the 274 leasehold tracts, not including the value of any improvements, was $35,000. Adding this value to the income capitalization

---

[4] Flanagan testified that he did not have the financial information for the property for the year 2002 available to him so he used information for the year 2001. He also testified that the $493,200 figure included rental income from the restaurant. Our calculations show, however, that $1800, the average rent for each of the leasehold tracts, multiplied by 274 is $493,200. It appears, therefore, that this figure did not include the restaurant rent.

value of $15,000, he concluded that each tract had a fair market value of $50,000, which, multiplied by 274, gave a total value for the leasehold tracts of $13,700,000. Flanagan valued 85.5 acres of land located elsewhere on the property at $218,000,[5] another 26 acres of undeveloped land at $130,000, and the remaining buildings, including the family residence, at $287,000, for a total value of $14,335,000.

The trial court accepted Morra's valuation of the property, determined that the true and actual value of the property on October 1, 2002, October 1, 2003, and October 1, 2004, was $2,355,000,[6] and rendered judgment in favor of the plaintiff. The court rejected Flanagan's valuation because it concluded that: (1) he improperly had attributed the value of the tenants' leasehold interest, which belonged to the tenants, to the value of the plaintiff's property and; (2) the valuation was predicated on the assumption that the land on which the restaurant and the family residence were located could be sold as individual parcels when, in fact, the land could not be subdivided. The town appealed from the judgment to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The town claims on appeal that the trial court improperly concluded that, as a matter of law, it could not consider the value of the leasehold interest in determining the fair market value of the property for purposes of assessing a property tax against the plaintiff. The

---

[5] This land consisted of the eighty-three acres of open space valued at $1000 per acre, two acres associated with the restaurant valued at $50,000 per acre, and one-half acre associated with the family residence valued at $35,000.

[6] Although the plaintiff's complaint involved only the tax years ending October 1, 2002, and October 1, 2003, the tax year ending October 1, 2004, passed during the pendency of the appeal and, therefore, the trial court's judgment included that tax year.

town further claims that, if the trial court had applied the proper standard, it reasonably could not have concluded that the plaintiff had met its burden of proving that the assessment was excessive. At oral argument before this court, the town argued that, if this court were to conclude that the trial court applied the wrong legal standard and that the record is inadequate for this court to ascertain whether the town should prevail under the correct legal standard, then the matter should be remanded to the trial court for further proceedings. The plaintiff counters that the trial court did not adopt any broad rule of law, but found only that, as a factual matter, Flanagan's approach was inappropriate for this particular property. The plaintiff further contends that this finding was reasonable and supported by the record. We agree with the town that the trial court applied an improper legal standard and conclude that the case should be remanded for further proceedings.

"In actions requiring . . . a valuation of property, the trial court is charged with the duty of making an independent valuation of the property involved. . . . [N]o one method of valuation is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. . . . [T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has broad discretion in reaching such conclusion, and [its] determination is reviewable only if [it] misapplies or gives an improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Route 188, LLC* v. *Middlebury*, 93 Conn. App. 120, 124, 887 A.2d 958 (2006). Our review of the legal conclusions

of the trial court is plenary. See *Steelcase, Inc.* v. *Crystal*, 238 Conn. 571, 577, 680 A.2d 289 (1996).

Because the correct characterization of the trial court's ruling as a legal conclusion or a factual finding affects our standard of review, we must address that issue at the outset. In rejecting Flanagan's appraisal, the trial court stated that " '[t]he leasehold estate is the lessee's, or tenant's, estate. When a lease is created, the tenant usually acquires the rights to possess the property for the lease period, [and] to sublease the property (if this is allowed by the lease and desired by the tenant) . . . . In return, the tenant is obligated to pay rent, surrender possession of the property at the termination of the lease, remove any improvements the lessee has modified or constructed (if specified), and abide by the lease provisions.' Appraisal Institute, The Appraisal of Real Estate (12th Ed. 2001) p. 83. As one can see, the value of the tenant's leasehold interest cannot be tacked on to the lessor's interest, because that would require the plaintiff to pay a real estate tax on property that cannot be attributed to him, as the owner." The court concluded that "Flanagan used an incorrect appraisal process by combining the value of the tenant's interest with that of the lessor's interest in the tracts on the subject property. The gain from the sales of various tracts on the subject land cited by the town's appraiser benefited only the tenants, not the lessor." Thus, contrary to the plaintiff's claim, the trial court did not simply conclude that a comparable sales approach to valuing the leasehold interest for purposes of assessing that value against the plaintiff was inappropriate for this particular property. Rather, the court stated unequivocally that, as a generally applicable rule of law, the value of a leasehold interest cannot be attributed to the lessor when valuing the lessor's property interest for assessment purposes. Accordingly, our review of this question is plenary.

Our decision in *First Bethel Associates* v. *Bethel*, 231 Conn. 731, 651 A.2d 1279 (1995), is instructive on the question before us. In that case, we considered whether the trial court properly had reduced an assessment on the plaintiff's real property, which was subject to a number of long-term commercial leases, when it considered both the actual rental income and the market rent in determining the true and actual value of the property. Id., 733–34. The plaintiff property owner brought an action against the defendants, the town of Bethel and its board of tax review, requesting a reduction of the assessment on its real property. Id. Although both the defendants and the plaintiff used an income capitalization approach to value the property, the defendants relied solely on fair market rents derived from rental information that had been supplied by other property owners, while the plaintiff relied solely on actual income derived from the property. Id., 735–36. The trial court concluded that the valuation properly should have taken into account both the actual rental income and the property's market rental value. Id., 736. It recalculated the fair market value of the property at an amount lower than the defendants' appraisal, but higher than the plaintiff's, and rendered judgment for the plaintiff in the amount of the overpayment. Id.

The defendants appealed from the trial court's judgment claiming that the court could consider only "capitalization of net income based on market rent for similar property"; General Statutes § 12-63b (a) (3);[7] in valuing

[7] General Statutes § 12-63b (a) provides in relevant part: "The assessor or board of assessors in any town, when determining the present true and actual value of real property as provided in section 12-63, which property is used primarily for the purpose of producing rental income . . . and with respect to which property there is insufficient data in such town based on current bona fide sales of comparable property which may be considered in determining such value, shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2)

the plaintiff's rental income property. *First Bethel Associates* v. *Bethel*, supra, 231 Conn. 736–37. The plaintiff cross appealed, claiming that, because the main lease on the property would extend beyond the town's next revaluation, the court was bound by § 12-63b (b)[8] to base the valuation on the actual rental income. Id., 737. This court concluded that the trial court properly had concluded that it must consider *"both* (1) net rent for comparable properties, and (2) the net rent derived from any existing leases on the property. This legislative approach makes sense because it reflects the reality that a willing seller and a willing buyer—whose ultimate judgments are what we mean by fair market value— would themselves consider in arriving at a price for the property that is subject to leases that do not closely approximate current rentals for similar properties." (Emphasis in original; internal quotation marks omitted.) Id., 740.

Thus, we recognized in *First Bethel Associates* that § 12-63b clearly contemplated that an income capitalization analysis based solely on actual rental income from a long-term lease might not reflect the true and actual value of the property for purposes of General Statutes § 12-64, if the actual rents did not reflect fair market value. In other words, we recognized that a leased property might have a fair market value that exceeds the capitalized value of the actual rental income and that excess value may be taken into account in assessing the true and actual value of the property for purposes of taxing the owner, even though the tenant receives

the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property. . . ."

[8] General Statutes § 12-63b (b) provides in relevant part: "In determining market rent the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination."

the economic benefit of that excess value.[9] In taking that excess value into account, the town does not thereby tax the property owner for a property interest that belongs to the lessee. Rather, the town uses the excess value as an *indicator* of the true and actual value of the owner's interest.

Moreover, as the town points out, if it cannot assess a tax on the owner of leased property for the market value of the leasehold interest, it will be unable to tax

---

[9] This conclusion is in accord with the decisions of numerous courts from other jurisdictions that have considered the question. See, e.g., *Clayton* v. *Los Angeles*, 26 Cal. App. 3d 390, 393, 102 Cal. Rptr. 687 (1972) (landowner may be assessed for entire value of land " 'without distinction between possessory and reversionary interests' "); *Denver* v. *Board of Assessment Appeals*, 848 P.2d 355, 362 (Colo. 1993) (assessor may consider both market rent and actual rent in assessing value of leased property); *Valencia Center, Inc.* v. *Bystrom*, 543 So. 2d 214, 217 (Fla. 1989) (property tax assessment must reflect value of all interests in land, including both lessor's and lessee's interests, even when value effectively has been transferred to lessee); *Oberstein* v. *Board of Review*, 318 N.W.2d 817, 820 (Iowa App. 1982) (real property subject to long-term lease is subject to single assessment based on value of interests of lessor and interests of lessee); *Supervisor of Assessments* v. *Ort Children Trust Four*, 294 Md. 195, 208–11, 448 A.2d 947 (1982) (assessing authority must consider both contract rent and fair market rent in assessing value of property subject to long-term lease); *Donovan* v. *Haverhill*, 247 Mass. 69, 70–72, 141 N.E. 564 (1923) (in assessing market value of property, assessor not required to deduct surrender value of below market long-term leases); *Omaha Country Club* v. *Board of Equalization*, 11 Neb. App. 171, 182, 645 N.W.2d 821 (2002) (fair market value of real property must be ascertained by determining fee simple value, including value of leasehold estate, leased fee estate and any other severed estate); *In the Matter of County Dollar Corp.* v. *Yonkers*, 97 App. Div. 2d 469, 472, 467 N.Y.S.2d 666 (1983) ("existence of an outstanding lease at an unrealistically low rental for a long term is not to be used as a basis for calculating actual value" of property); *Folsom* v. *Spokane*, 106 Wash. 2d 760, 769–70, 725 P.2d 987 (1986) ("[i]f market rents exceed contract rent, the appropriate method of valuation is to add the present value of the leasehold bonus to the capitalized value of contract rent").

To the extent that any of these cases suggest that *only* market rents may be considered when determining the true and actual value of a rental income property, such a conclusion is foreclosed by our conclusion in *First Bethel Associates* v. *Bethel*, supra, 231 Conn. 740, that *both* actual rents and market rents must be considered.

the true and actual value of the property as required by General Statutes § 12-62a (b).[10] Towns are authorized by statute to assess taxes on real property against the owner of the property. See General Statutes § 12-64 (a) ("[a]ny interest in real estate shall be set by the assessors in the list of the person in whose name the title to such interest stands on the land records"); *Lerner Shops of Connecticut, Inc.* v. *Waterbury,* 151 Conn. 79, 84, 193 A.2d 472 (1963). The tax is assessed against the owner even when the property has been leased. See *University of Hartford* v. *Hartford,* 2 Conn. App. 152, 158, 477 A.2d 1023 (1984) ("[l]eased property is assessed against the lessor as the owner of the freehold estate"). "Municipalities have no powers of taxation other than those specifically given by statute, and strict compliance with the statutory provisions is a condition precedent to the imposition of a valid tax." *Empire Estates, Inc.* v. *Stamford,* 147 Conn. 262, 264, 159 A.2d 812 (1960). The statute provides no authority for towns to assess a tax against a lessee on the value of the leasehold in excess of the actual rent.[11] It is clear, therefore,

---

[10] See footnote 2 of this opinion for the text of § 12-62a (b).

[11] The plaintiff argues that § 12-64 authorizes the town to tax a tenant's leasehold interest because the leases are for residential purposes, they permit each lessee to remove the structures on the leased tract, the leases are all recorded in the land records of the town, and each lease provides that the lessee is liable for all taxes relevant to the structures erected on each tract. See General Statutes § 12-64 (a) ("[i]f the interest in real estate consists of a lease of land used *for residential purposes* which *allows the lessee to remove any or all of the structures, buildings or other improvements on said land* erected or owned by the lessee, which *lease is recorded in the land records* of the town and *provides that the lessee shall pay all taxes* with respect to such structures, buildings or other improvements, said interest shall be deemed to be a separate parcel and said structures, buildings or other improvements shall be separately assessed in the name of the lessee" [emphasis added]). The plaintiff ignores the plain language of the statute providing that "*said structures, buildings or other improvements* shall be separately assessed in the name of the lessee . . . ." (Emphasis added.) General Statutes § 12-64 (a). Nothing in the statute authorizes the town to assess a tax against the tenant for the leasehold interest. Indeed, the plaintiff appeared to concede as much at oral argument before this court when he argued that the fact that the town *may not* assess a tax against

that, in the present case, the town has no authority to assess a tax on the tenants of the leasehold tracts for the value of their leasehold interests. If the income capitalization analysis based on the actual rents does not reflect the true and actual value of the property because the rents do not reflect fair market value, and if the town cannot assess the plaintiff for the fair market value of the leasehold interest, then a portion of the true and actual value of the property will evade assessment. Accordingly, we conclude that the trial court's statement that "the value of the tenant's leasehold interest cannot be tacked on to the lessor's interest, because that would require the plaintiff to pay a real estate tax on property that cannot be attributed to him, as the owner," was an incorrect statement of the law. As we have indicated, considering the value of the lessee's interest does not require the plaintiff to pay a tax on property that belongs to the lessee, but only to pay a tax on the true and actual value of his own property *as measured*, in part, by the value of the lessee's interest.

It remains for us to determine whether the town was authorized to use a comparable sales approach to determine the true and actual value of the leasehold tracts in excess of the capitalized value based on actual income, or whether it was limited to using a valuation approach based on the "capitalization of net income based on market rent for similar property." General Statutes § 12-63b (a) (3). We conclude that the town was authorized to use a comparable sales approach to value the rental income property. Section 12-63b (a) expressly provides that the income capitalization approach may be used to appraise rental income property when "there is insufficient data . . . based on current bona fide sales of comparable property which may be considered in determining such value . . . ." It is

the tenant for the value of a leasehold interest does not mean that it *may* assess a tax against the owner for the value of that interest.

clear, therefore, that when comparable sales information is available, it may be used. Moreover, the Appellate Court previously has recognized, and we now agree, that "valuation of some properties may appropriately involve more than one single theory of valuation . . . ." *Whitney Center, Inc.* v. *Hamden*, 4 Conn. App. 426, 428, 494 A.2d 624 (1985). As we have indicated, "[n]o one method of valuation is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property." (Internal quotation marks omitted.) *Route 188, LLC* v. *Middlebury*, supra, 93 Conn. App. 124.

The plaintiff argues, however, that if the town is allowed to assess a tax against him for the value of the leasehold interest, then he will be taxed *both* for that interest *and* for the current fair market value of the leasehold tracts. We disagree. The leasehold interest would have no monetary value above the value of the improvements if the capitalized value of the actual rents were equivalent to the fair market value of the leasehold tracts. The town merely used the value of the tenants' leasehold interest as an indicator of that fair market value.

We next address the town's claim that, if the trial court had applied the proper legal standard in the present case, it reasonably could not have concluded that the plaintiff had met his burden of proving that the assessment was excessive. The plaintiff counters that, even if the trial court improperly determined that the town was barred as a matter of law from assessing the value of the leasehold interest against him, the court properly rejected the town's appraisal because Flanagan's methodology was flawed. Specifically, the plaintiff argues that Flanagan ignored actual rental income information in calculating the value of the lessor's interest under an income capitalization approach; his appraisal

of the leasehold interest was based on the unfounded assumption that the price paid by the buyers did not include the value of the improvements; there was no specific factual support for his testimony that the value derived from a comparable sales analysis was confirmed by a cost approach analysis, which resulted in a price of $23,000 to $24,000 for each one-tenth of an acre lot if the land were subdivided; his appraisal did not sufficiently take into account the unique characteristics of the property; and the evidence compelled a finding that the actual rent on the leasehold tracts reflected fair market value. The trial court, however, made no findings on these questions of fact because it concluded, as a matter of law, that the town could not consider the value of the leasehold interest in assessing the value of the property. Accordingly, we conclude that the case should be remanded to the trial court so that it may apply the proper legal standard and address these factual issues.

The judgment is reversed and the case is remanded to the trial court for further proceedings according to law.

In this opinion the other justices concurred.