******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SALISBURY BANK AND TRUST COMPANY *v.* ERLING
C. CHRISTOPHERSEN ET AL.
(AC 37269)

Lavine, Alvord and Wilson, Js.

*Argued January 7—officially released March 1, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Complex Litigation Docket,
Genuario, J.)

*Andrew M. McPherson*, with whom, on the brief, was
*William J. Kupinse, Jr.*, for the appellants (named
defendant et al.).

*Patrick M. Fahey*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant Erling C. Christophersen, individually and as trustee,[1] appeals from the judgment of strict foreclosure rendered by the trial court. On appeal, the defendant claims that the court abused its discretion by ordering a judgment of strict foreclosure rather than a foreclosure by sale. We affirm the judgment of the trial court.

In its memorandum of decision issued on June 2, 2014, the trial court made the following findings of fact that are relevant to the defendant's appeal. Prior to December, 2006, the defendant in his individual capacity had an ownership interest in two adjacent parcels of real property in Westport known as 1 Chalmers Landing (Chalmers parcel) and 259 Saugatuck Avenue (Saugatuck parcel), (collectively the property). The defendant acquired his interest in the property by conveyances from members of his family or family trusts. In 2006, the defendant was in need of cash to pay off encumbrances on the property, back taxes, and personal expenses. To secure a loan, he met with a representative of the plaintiff, Salisbury Bank and Trust Company, on November 24, 2006, and represented that the property was being offered for sale for $9 million. He suggested that the plaintiff serve as a cotrustee of the property and eventually as cotrustee of the net proceeds from the sale of the property. At all times relevant, both parties understood that the only way that the defendant could repay the loan was with the proceeds from the sale of the property. The plaintiff was interested in the defendant's proposal given the potential for funds to accrue to its trust department.

The plaintiff commissioned a summary appraisal of the property that valued the Saugatuck parcel at $4.675 million and the Chalmers parcel at $4.725 million. The defendant's lawyer drafted a document entitled "The Erling C. Christophersen Revocable Trust" (trust),[2] which the defendant signed as both grantor and trustee on November 21, 2006, and the plaintiff signed on December 4, 2006. Thereafter, the plaintiff issued a loan commitment letter in the amount the defendant requested, $740,000. The loan was conditioned on the plaintiff's remaining a cotrustee " 'so long as there is debt owed to [it].' "

By February, 2007, the parties realized that the defendant's original plan was insufficient. The defendant, therefore, prepared a second business plan, which revealed that the property was subject to certain family interests. In particular, the defendant represented that his mother, Lorna B. Christophersen, who previously had a 25 percent interest in the property, had conveyed her interest to the defendant. As a result of the conveyance, the defendant had a 75 percent interest in the property. The remaining 25 percent interest was owned

by the defendant's aunt, Elena B. Dreiske. The defendant represented in his second business plan that Dreiske had agreed to accept $1.5 million for her interest in the property. The second business plan also called for the creation of a credit line of $2.5 million in favor of the defendant, which included the amount the defendant needed to acquire Dreiske's share of the property.

In May, 2007, the defendant presented the plaintiff with a third business plan that called for the plaintiff to lend him $3,228,757. The additional funds were needed, in part, to pay Dreiske, who then wanted $1.75 million for her share of the property, to pay a variety of the defendant's debts, and to create an interest reserve for such things as future property taxes. On May 29, 2007, the plaintiff issued a commitment letter to the defendant for a loan in the amount of $3,386,609. The loan was conditioned on a satisfactory appraisal of the property indicating a maximum loan to collateral value of 50 percent and that the plaintiff remain a cotrustee of the trust as long as the defendant owed it a debt. By June 1, 2007, the plaintiff had acquired new appraisals of the property indicating that the Saugatuck parcel was worth $4.85 million and the Chalmers parcel was worth $1.85 million for a total value of $6.7 million.

While preparing to close on the transfer to the trust of Dreiske's interest in the property, the plaintiff's attorney reviewed the title search and found that the chain of title was "quite 'convoluted.' " The two most significant issues were (1) a restrictive covenant on the Saugatuck parcel, which may have prohibited the construction of a dwelling on it, and (2) a document on the land records purporting to revoke the conveyance by the defendant's mother of her interest in the property to the defendant and a quitclaim deed by which she conveyed her interest to John R. Christophersen, the defendant's brother.

In response to the information regarding the restrictive covenant on the Saugatuck parcel, the plaintiff commissioned another appraisal, asking that the Saugatuck and Chalmers parcels be assessed jointly as one building lot. The appraisal was completed by July 17, 2007, and indicated that the property as one building lot had a fair market value of $6.5 million. The defendant criticized the July, 2007 appraisal for undervaluing the property. As a result of the July, 2007 appraisal, the transaction no longer met the loan condition that the value of the loan be no more than 50 percent of the appraised value, as the loan to value ratio predicated on the July, 2007 appraisal was 52.1 percent. The plaintiff, however, amended the loan ratio condition to 52.1 percent of value.

With respect to the defendant's mother's having revoked the conveyance of her interest in the property to the defendant and quitclaimed it to her son, John R. Christophersen, the plaintiff required the defendant to provide title insurance to insure against a claim on the

property by his brother. It also required the defendant to establish a $50,000 litigation reserve from the proceeds of its loan to him.

The loan transaction closed on August 8, 2007. Dreiske transferred her interest in the property to the defendant, who in turn transferred his interest in the property to himself and the plaintiff, as cotrustees of the trust. The cotrustees granted a mortgage to the plaintiff in the face amount of $3,386,609. The mortgage secured the amount borrowed by the trustees and was personally guaranteed by the defendant. Of the face amount of the loan, $3 million was disbursed at the closing. After the closing, the defendant in his sole discretion continued to market the property for sale.

On or about October 1, 2007, the defendant procured a document purporting to release the restriction against building on the Saugatuck parcel. The document was signed by an entity involved in its creation and filed on the land records on October 10, 2007. The defendant sent the document to the plaintiff. The court found, however, that at no time did an attorney advise the defendant in any manner of the effectiveness of the document to release the restrictions on the Saugatuck parcel.

On January 30, 2008, counsel for the owners of neighboring properties notified the parties that a notice of claim was being filed on the Westport land records, asserting that the restriction against building on the Saugatuck parcel was in full force and effect and that they intended to enforce their rights as to it. The neighbors also informed realtors and prospective buyers that they intended to enforce the building restriction. The court found that, at a minimum, the neighbors' actions created a significant impediment to the marketing of the property, particularly to the marketing of the Saugatuck parcel as a separate, independent building lot.

In May, 2008, John R. Christophersen commenced a civil action against the plaintiff and the defendant claiming an interest in the property. That action also negatively affected the defendant's ability to market the property. The defendant took primary, if not sole, responsibility to market the property. The court found that the defendant's conduct in taking responsibility for marketing the property and the plaintiff's deferring to the defendant's decisions was consistent with the provisions of paragraph second of the trust document.

Between August, 2007, when the loan transaction closed, and October, 2008, the plaintiff paid itself trustee fees from the loan proceeds deposited with its trust department. The court found that the plaintiff's paying itself trustee fees was consistent with the provisions of the trust document and that the fees paid to the plaintiff were not in excess of that to which it was entitled under the trust document. Due to the fact that

the property had not been sold by October, 2008, the plaintiff was increasingly concerned with the liquidity of the trust and the plaintiff's, as well as the defendant's, ability to continue to pay debt service on the loan. Thereafter, the plaintiff suspended its trustee fees.

On October 27, 2008, the plaintiff again had the property appraised as separate building lots. The Saugatuck parcel was valued at $4.8 million and the Chalmers parcel was valued at $2.05 million. The plaintiff resigned as cotrustee of the trust on January 6, 2009. On October 5, 2009, the plaintiff sent the defendant a notice of default for failure to make the required interest payments, to pay the loan by the maturity date, and to pay property taxes, and for granting subsequent mortgages on the property in violation of the mortgage covenants.

On May 27, 2009, the property was once again appraised as separate building lots. The Saugatuck parcel was valued at $3.85 million and the Chalmers parcel was valued at $1.9 million. The plaintiff commenced the present foreclosure action on July 14, 2010.

In June, 2012, the plaintiff, at its own expense, settled John R. Christophersen's claim on the property for $250,000 and committed, among other things, to pay him if it took title to the property and released its mortgage lien. In settling the claim, the plaintiff secured a release of John R. Christophersen's claim of interest in the property and a general release from him in favor of the defendant and the defendant's wife.

At the trial held in February, 2014, the plaintiff presented evidence of updated appraisals, which valued the property as one building lot at $3.54 million. The defendant produced an appraiser who valued the parcels separately: $3.75 million for the Saugatuck parcel and $2.64 million for the Chalmers parcel. The court issued its memorandum of decision on June 2, 2014.

The court found that the plaintiff had lent $3,386,609 to the defendant as trustee and that the defendant individually guaranteed the amount of the loan, which was in default. As of January 31, 2014, the defendant owed the plaintiff $3,386,609 for principal, $1,266,877.16 for interest, $2008.78 for late charges, $440,726.08 for taxes paid, $3000 for appraisal fees, plus reasonable attorney's fees. Per diem interest was accruing on the debt at the rate of $729.06. The court found that the defendant's business plan failed for a variety of reasons. In part it was the result of the market forces that occurred subsequent to the loan closing in August, 2008, which was on the eve of the great recession. It also failed in part due to the defendant's failure to resolve the dispute with John R. Christophersen, to recognize the significance of the cloud on title caused by the restrictive covenant on the Saugatuck parcel, and to adjust his marketing strategy in the face of those obstacles.[3]

The court stated that valuing the property in the pre-

sent case was an unusual component of the foreclosure. The court found that the property was unique in being either two one-acre parcels or one two-acre parcel of waterfront property in a highly desirable area on the shores of the Saugatuck River in Westport. The property had been the subject of multiple appraisals prior to the August, 2007 closing. The court found that it could not rely heavily on the appraisals done prior to the economic crisis of 2008 and shortly thereafter in 2009 for meaningful sale price comparables due to the subsequent dramatic change in the real estate market.

The court considered the restrictive covenant that arguably encumbers the Saugatuck parcel in determining its value. The court found that the purported restrictive covenant, regardless of its enforceability, is a significant detriment to marketing the property. The court declined to determine, as a matter of law, whether the restrictive covenant is enforceable, by whom, and to what extent for three reasons: there was insufficient evidence for the court to make that determination; the pleadings did not place the issue before it; and all of the parties who have an interest in that determination were not before it.

In determining the fair market value of the property, the court decided to value it as one two-acre lot for three reasons. First, the court found that regardless of whether the purported restrictive covenant on the Saugatuck parcel was enforceable, the evidence indicated that the restrictive covenant represented a significant cloud on title that adversely affected the ability of the parcel to be marketed as a single building lot. Second, the plaintiff's appraiser credibly testified that the fair market value should be determined as one two-acre lot on the basis of the information he had obtained about the Saugatuck parcel and the restrictive covenant. Although the appraiser was not qualified to assess the enforceability of the restrictive covenant, the court found that he was entitled to rely on the information and documents that such professional would rely on as independent evidence of the validity of the restrictive covenant. The court adopted the appraiser's approach. Third, the court found that the defendant often marketed the property as a single building lot.

The court extensively examined and compared the evidence presented by the plaintiff's appraiser as to the value of the Chalmers parcel, which was a buildable lot. The court found that the fair market value of the Chalmers parcel without the benefit of the Saugatuck parcel was $4 million. The court found that the Saugatuck parcel adds significantly more value to the Chalmers parcel than would any of the comparable unbuildable properties analyzed by the plaintiff's trial appraiser due to its water views and water frontage. Moreover, combining the adjacent Chalmers and Saugatuck parcels adds a significant benefit by eliminating

the twenty-five foot setback between the two parcels, which provides enhanced views of the Saugatuck River and enhancements to the Chalmers parcel via the ability to construct various amenities on the Saugatuck parcel that would service the residence. The court found that the addition of another one acre property with substantial views and water frontage would increase the value of the Chalmers parcel by $1.12 million. It therefore found the fair market value of the property as a one two-acre lot to be $5.12 million.

The parties subsequently appeared before the court to present evidence of reasonable attorney's fees and evidence of per diem interest and property taxes to update the amount of the debt. The plaintiff requested $135,000 in attorney's fees pursuant to the promissory note, which the court found to be reasonable given that this was not a routine foreclosure matter. The court found the debt, as of July 28, 2014, to be $5,451,916.14 and that per diem interest was continuing to accrue at the rate of $729.06. The court also found that the amount of the debt exceeds the value of the property, which it previously had determined to be $5.12 million, and ordered that a judgment of strict foreclosure enter in favor of the plaintiff. The court set the law day of September 16, 2014. The defendant appealed.

On appeal, the defendant claims that the court abused its discretion by rendering a judgment of strict foreclosure rather than a foreclosure by sale "because there is monumental uncertainty as to the value of the property and as a result there is also monumental uncertainty as to whether the debt owed to [the] plaintiff is greater than the value of the property." The defendant argues, on the basis of his appraiser's opinion, that the Saugatuck and Chamlers parcels should be valued as two separate building lots, which would result in a value in excess of the debt owed the plaintiff.

"[I]n Connecticut, the law is well settled that whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court. . . . The foreclosure of a mortgage by sale is not a matter of right, but rests in the discretion of the court before which the foreclosure proceedings are pending." (Citations omitted; internal quotation marks omitted.) *Fidelity Trust Co.* v. *Irick*, 206 Conn. 484, 488, 538 A.2d 1027 (1988).

"In actions requiring . . . a valuation of property, the trial court is charged with the duty of making an independent valuation of the property involved. . . . [N]o one method of valuation is controlling and . . . the [court] may select the one most appropriate in the case before [it]. . . . Moreover, a variety of factors may be considered by the trial court in assessing the value of such property. . . . [T]he trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowl-

edge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has broad discretion in reaching such conclusion, and [its] determination is reviewable only if [it] misapplies or gives an improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Sheridan* v. *Killingly*, 278 Conn. 252, 259, 897 A.2d 90 (2006). "Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Owen*, 88 Conn. App. 806, 812, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005).

On the basis of our review of the record and the court's detailed and well reasoned memorandum of decision, we conclude that it did not abuse its discretion by ordering a judgment of strict foreclosure.

The judgment is affirmed and the case is remanded for the setting of new law days.

[1] The action was brought against Erling C. Christophersen individually and in his fiduciary capacity as a trustee of the Erling C. Christophersen Irrevocable Trust. The other defendants, who are not parties to this appeal, are the subsequent encumbrancers: John R. Christophersen, Law Offices of Gary Oberst P.C., Rhoda L. Rudnick, and Hinckley, Allen & Snyder LLP. In this opinion we refer to Erling C. Christophersen as the defendant.

[2] At the time the trust document was signed, the only property that was subject to the trust was $5, but the document provided for additions to the trust corpus. The parties intended that the property eventually would be transferred to the trust.

[3] With respect to the defendant's special defense that the plaintiff breached its fiduciary duty as cotrustee, the court found that the plaintiff proved that it acted fairly and in a manner consistent with its fiduciary duty.